United States District Court
Southern District of Texas
**ENTERED**
September 18, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIAN RALPH DARK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-3104 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION,[1] | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary

Judgment (Document No. 14), and Defendant's Cross Motion for Summary Judgment (Document

No. 12). After considering the cross motions for summary judgment, each side's Response to the

other's Motion for Summary Judgment (Document Nos. 15 & 16), the administrative record, and the

applicable law, the Court ORDERS, for reasons stated below, that Plaintiff's Motion for Summary

Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter

is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of the Social Security
Administration. The parties consented to proceed before the undersigned Magistrate Judge on
December 30, 2019. (Document No. 17).

## I.  Introduction

Plaintiff Brian Ralph Dark ("Dark") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB").  Dark argues that the Administrative Law Judge ("ALJ") committed errors of law when he found that Dark was not disabled. Dark argues that the ALJ, Scott T. Morris, erred in finding that he did not meet or equal listings 12.04 or 12.15 under 20 C.F.R § 404.1526.  Dark requests that the court reverse the ALJ's decision and remand for an award of benefits or, in the alternative, additional administrate proceedings. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Dark was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II.  Administrative Proceedings

On July 17, 2017, Dark filed for DIB, claiming that he had been unable to work since September 9, 2016 due to bipolar disorder with mixed episodes and post-traumatic stress disorder (PTSD) (Tr. 15; 74; 86; 175-176; 200). The Social Security Administration denied his application at the initial and reconsideration stages. (Tr. 32-73). Dark then requested a hearing before an ALJ. (Tr. 102-106). The Social Security Administration granted his request, and the ALJ, Scott T. Morris, held a hearing on September 14, 2018, at which Plaintiff, represented by counsel, and an impartial vocational expert testified. (Tr. 111-114). On January 8, 2019, the ALJ rendered a decision finding Dark not disabled.  (Tr. 12-25).

On March 12, 2019, Dark sought review of the ALJ's adverse decision with the Appeals Council. (Tr.14-17). The Appeals Council will grant a request to review an ALJ's decision if any of

2

the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. 20 C.F.R. § 416.1470. After considering Dark's contentions in light of the applicable regulations and evidence, on June 7, 2019, the Appeals Council subsequently denied review, leaving the ALJ's findings and decision as the Commissioner's final decision. 20 C.F.R § 404.981.

Dark filed a timely appeal of the ALJ's decision. Both sides have filed a Motion for Summary Judgment. This appeal is now ripe for ruling.

## III. Standard for Review of Agency Decision

The court's review of the Commissioner's denial of social security benefits is limited "to determining (1) whether the Commissioner's final decision is supported by substantial evidence; and, 2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment" for that of the [Commissioner]

even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

"Substantial evidence," as defined by United States Supreme Court, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  It is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.  Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

he is not only unable to do his previous work but cannot, considering his age,

4

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Sullivan*, 954 F.2d at 293 (quoting *Milan v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe" impairment or combination of impairments, he will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, he will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner

determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

Here, the ALJ found at step one that Dark had not engaged in substantial gainful activity since September 9, 2016, his alleged onset date of disability. (Tr. 17, Finding 2). At step two, the ALJ determined that Dark's bipolar disorder with mixed episodes and PTSD were severe impairments. (Tr. 18, Finding 3). At step three, the ALJ concluded that Dark did not have an impairment or a combination of impairments that met or medically equaled a listed impairment, including Listings 12.04 and 12.15. (Tr. 18-19, Finding 4). Prior to the consideration of steps four and five, the ALJ determined that Dark had the "residual functional capacity (RFC) to perform the full range of work at all exertional levels, but had the following non-exertional limitations: can understand, remember, and carry out detailed, but not complex, instructions; adapt to changes in a routine work setting where such changes pertain to simple, work-related decisions; use judgment to make simple, work-related decisions; and have frequent interaction with supervisors and coworkers, but no interaction with the general public." (Tr. 19, Finding 5). Using the residual functional capacity assessment, the ALJ concluded, at step four, that Dark was unable to perform any past relevant work. (Tr. 23, Finding 6). At step five, upon consideration of Dark's age, education, work experience, and RFC assessment, and with the assistance of the vocational expert's testimony, the ALJ concluded that there were jobs in significant numbers in the national economy that Dark could perform, including stocker, hand packager, and dietary aide, and that Dark was, therefore, not disabled within the meaning of the Act. (Tr. 23-24, Finding 10).

In this appeal, Dark argues that: 1) the ALJ did not consider all the evidence in evaluating "paragraph B" and "paragraph C" criteria when determining that Dark's impairments failed to equal

a listing and, 2) the ALJ erred in not considering Dark's absenteeism when deciding his residual

functional capacity (RFC). According to Dark, "[his] conditions meet or equal the listing under 12.04

for bipolar disorder, and 12.15 for PTSD." Plaintiff's Motion for Summary Judgment (Document

No. 14) at 4.  Dark seeks an order reversing the ALJ's decision, and awarding benefits, in the

alternative, remanding his claim for further consideration.  The Commissioner responds that there

is substantial evidence in the record to support the ALJ's decision that Dark was not disabled, that

the decision comports with applicable law, and that the decision should, therefore, be affirmed.

**V.  Discussion**

Dark argues that the ALJ's finding  that Dark's conditions do not meet or equal the listings

under 12.04 and 12.15 is not supported by substantial evidence.

In determining that Dark did not meet Listings 12.04 and 12.15, for bipolar disorder and

PTSD, the ALJ determined that Dark had only mild limitations in understanding, remembering or

applying information; moderate limitations in interactions with others; moderate limitations in

concentrating, persisting or maintaining pace; and moderate limitations in adapting or managing

himself. The entirety of the ALJ's consideration of Listing 12.04 and 12.15 is as follows:

> The severity of the claimant's mental impairments, considered singly and in combination,
> do not meet or medically equal the criteria of listing 12.04 and 12.15. In making this finding,
> the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy
> the "paragraph B" criteria, the mental impairments must result in at least one extreme or two
> marked limitations in a broad area of functioning which are: understanding, remembering,
> or applying information; interacting with others; concentrating, persisting, or maintaining
> pace; or adapting or managing themselves. A marked limitation means functioning in this
> area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> An extreme limitation is the inability to function independently, appropriately or effectively,
> and on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a mild limitation.
> On examination, he has repeatedly been found to be oriented X 4. He is able to follow

instructions sufficient to prepare meals (Exhibit 4E).

In interacting with others, the claimant has a moderate limitation. He socializes with friends (Exhibit 4E). He denied that he has ever been fired or laid off from a job because of problems getting along with other people. He does not have a problem getting along with family, friends, or neighbors (Exhibit 3E). However, he has a history of PTSD and bipolar disorder.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He is able to maintain sufficient concentration to pay bills and drive (Exhibit 4E). He is able to follow television and movie plots. Nonetheless, he has a history of PTSD and bipolar disorder.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. He lives alone where he independently attends to his personal hygiene and household chores (Exhibit 4E). However, he has reported that he bathes and changes his clothes once every few days.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

(Tr. 18-19).

At Step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award

benefits.  20 C.F.R. § 404.1520(d). The Listing of Impairments "describes for each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim.  20 C.F.R. § 404.1525(d).  "A generalized assertion of functional problems is not enough to establish disability at step three.  20 C.F.R. § 404.1526(a). The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairment.

Here, the ALJ found that Dark's impairments and combinations of impairments did not meet or equal any listings, including listing 12.04 (depressive, bipolar and related disorders), and 12.15 (trauma and stressor-related disorders).  The Paragraph B criteria associated with both listings are met if the impairment results in an "extreme" limitation of one, or a "marked" limitation of two, of the following areas of mental functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20 C.F.R. § 404, Subpart P, Appendix 1.  A marked limitation means functioning independently, appropriately, effectively, and on a sustained basis is seriously limited.   An extreme limitation is the inability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. § 404, Subpart. P, App. 1, § 12.00(F)(2)(d)-(e).  Paragraph C requires evidence that treatment is needed to control the claimant's symptoms and that the claimant has "minimal capacity to adapt to changes in [their] environment" despite treatment.

Dark contends that the ALJ erred at step three.  According to Dark, there is no argument that he fails to meet the requirements for paragraph A for either listing.  Rather Dark argues that he meets

the requirements of Paragraph B, which are the same for both listings and require marked limitations of two listed areas, or extreme limitations in one category, and Paragraph C.  With respect to Paragraph B, Dark contends that the ALJ's determination that he has only mild limitations in understanding, remembering, or applying information, moderate limitations in interacting with others, moderate limitations in concentrating, persisting, or maintaining pace, and moderate limitations with adapting or managing oneself is not supported by substantial evidence.  According to Dark, the ALJ's assignment of "mild" and "moderate" is solely based on self reported statements in function reports, one completed by Dark and the other by a friend, and the ALJ's assignment of "mild" and "moderate" is arbitrary and unexplained.  Dark argues that bulk of the medical records show that he has impaired functioning due to ongoing symptoms of PTSD and bipolar disorder.

As discussed above, the ALJ found that Dark had mild restrictions in understanding, remembering, or applying information.  This area of mental functioning refers to a claimant's ability "to learn, recall, and use information to perform work activities."  20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ wrote that Dark had "repeatedly been found to be oriented x 4" and had been able to follow instructions sufficient to prepare meals.  Dark challenges the ALJ's conclusion, arguing that his ability to understand, remember, and apply information, is markedly impacted by impaired cognition as documented by his treating psychiatrist and psychologist.  Dark points to treatment records from November 2016, February 2017, March 2017, June 2017, August 2017, October 2017, November 2017, December 2017, February 2018, and April 2018, which show his ongoing struggles  processing thoughts, and difficulty thinking. (Tr. 1008-1014, 1452-1457, 413, 396-405, 840-845, 791-796, 767-772, 763, 760, 1583-1587, 1559, 1531-1536).  According to Dark, the objective medical evidence undermines the ALJ's determination that Plaintiff's limitations in

this area are "mild."

Similarly, Dark argues that the ALJ's determination that he has "moderate" restrictions in the abilities to interact with others because "he socializes with friends, has not been fired because of problems getting along with others, and does not have a problem getting along with family, friends, or neighbors" (Tr. 18), disregards the medical evidence or even the Function Report that he had completed.   This area of mental functioning refers to a claimant's ability "to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § 404, Subpart P, Appendix I.   Dark points to a treatment note from November 2016, where he complained of struggling with people.   (Tr. 446, 1451-1457).   Or on January 2017, when he was self-isolating at home, and that when attending a peer group therapy session, he scanned the room to see if it was safe to enter.   (Tr. 421, 424-429). In March 2017, the treatment note shows he was struggling with increased stressors and anxiety that were triggered by his roommate spending more time at home (Tr. 394). In May 2017, Dark reported negative interactions with his roommate and thoughts that everyone is a liar (Tr. 381).   In June 2017, Dark reported increased difficulty functioning and avoiding his family.   (Tr. 839-845).   In August 2017, Dark again reported self isolating and that he did not have dinner with his parents, who had driven two hours to see him.   (Tr. 792).   In September 2017, Dark reported increased stressors because his roommates were having parties.   (Tr. 788).   In October 2017, Plaintiff reported intense anxiety and that he continued to self isolate.   (Tr. 773).   In February of 2018, Plaintiff continued to self isolate and was withdrawing from others including health care providers.   (Tr. 1562, 1555). Lastly, in June 2018, Plaintiff returned home from a misadventure in Honduras and self-isolated. (Tr. 1521).

Dark further argues that the ALJ's determination that he has "moderate" limitations in the

abilities to concentrate, persist, or maintain pace based on Function Reports indicating that he "is able to maintain sufficient concentration to pay bills and drive, . . . and follow television and movie plots" (Tr. 18), is contrary to the record. This area of mental functioning refers to a claimant's ability "to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R. § 404, Subpart P, Appendix I.  Dark points to his September 2015, hospitalization,(Tr. 484-489), and his nearly month long hospitalization in September 2016, following a suicide attempt.  (Tr. 1008-1014).  Dark further argues that he has spent at least forty-four days attending individual therapy sessions, and group therapy sessions, and that with schedule would not be able to maintain a normal work schedule. (Tr. 424, 421, 407, 408, 405, 396, 394, 393, 389, 1400, 386, 387, 385, 384, 381, 379, 380, 377, 840, 376, 594, 558, 645, 548, 546, 541, 544, 537, 810, 813, 535, 536, 807, 800, 791, 787, 775, 763, 760, 1583, 1562, 1559, 1553, 1540, 1531, 1527, 1517).

Dark further argues that the ALJ erred when he found that Dark has only "moderate" restrictions in adapting and managing himself because "[h]e lives alone where he independently attends to his personal hygiene and household chores."  (Tr. 18).  This area of mental functioning refers to a claimant's ability "to regulate emotions, control behavior, and maintain well-being in a work setting."  20 C.F.R. § 404, Subpart P, Appendix I.  Dark points to the record which shows that his housing situation has been unstable since he lives with friends and an on and off again girlfriend. He further points to the medical records which reflect that he had been flagged a high risk for suicide and continues to struggle with thoughts of suicide (Tr. 424-429, 1452-1457, 1400, 396-405), for feelings of hopelessness, lack of motivation and difficulties in making decisions.  (Tr. 446, 1452-1457, 396-405, 800-803, 763, 760).

Finally, Dark argues that the ALJ failed to set forth any analysis to support his determination

that Dark does not meet the Paragraph C criteria.  According to Dark, the ALJ set forth his conclusion that "[t]he record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life" without *any* explanation as to why Plaintiff fails to meet or equal C for listings 12.04 and 12.15.  (Tr. 19).  Dark maintains that this error is not harmless given that he suffers from "serious and persistent" mental disorders (PTSD and bipolar disorder) over a period of at least 2 years as documented in the treatment records from the VA, which show his ongoing struggles with psychiatric illnesses  despite medications and therapy. Dark points to his voluntary hospitalization for over a month in September 2016, following a suicide attempt, caused by job stress and non-compliance with medications and substance abuse. (Tr. 1008-1014, 938).  In March 2017, his symptoms increased (Tr. 396-405), and he had two manic episodes in May 2017. (Tr. 385).  Dark also points to treatment notes showing increased symptoms when there was an absence of a routine, a new routine or being around people.  (Tr. 767-768, 1527-28, 1417-18, 1518-1519).

The Commissioner counters that the ALJ's step three finding is supported by substantial evidence.  The Commissioner argues that the bulk of evidence shows that Plaintiff mental status examinations were normal, and that Plaintiff is relying on subjective statements to his health care providers, and that to meet a listing Plaintiff was required to provide objective evidence. (Tr. 382, 384, 397, 412-413, 424, 427, 434, 438, 447, 460, 462, 535-536, 546, 567, 761-762, 785, 1518-1521, 1527, 1540-1541, 1543, 1561).  The Commissioner further notes that no medical source opined that Plaintiff was disabled, or that he met or equaled a listing, or that he was precluded from the performance of all work activity.  Finally, the Commissioner notes that Plaintiff must meet *all*

13

portions of the criteria to meet a listing, not portions of each listing.

Upon this record, the ALJ did not offer enough reasons for finding that Plaintiff's impairments do not meet or equal a listed impairment, and as such, the matter must be remanded for further development of the record. The ALJ did not compare Plaintiff's symptoms or medical findings, especially those made by his treating psychiatrist, Dr. Busari or his treating psychologist, Dr. O'Neill, or social worker, against the criteria for the listings. The law is clear that "[t]he ALJ's decision must stand or fall with the reasons set forth in the decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002)("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). In *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), the ALJ, like the ALJ in the instant action, concluded that while the claimant had impairments that were severe, the impairments did not meet or equal a listed impairment. In *Audler*, the Fifth Circuit observed that "[t]he ALJ did not identify the listed impairment for which Audler's symptoms fail to qualify, nor did she provide any explanation as to how she reached the conclusion that Audler's symptoms are insufficiently severe to meet any listed impairment." *Id.* at 448. Because of this, the Fifth Circuit held that "[s]uch a bare conclusion is beyond meaningful judicial review." *See also Belk v. Colvin*, 648 F.App'x 452, 454-55 (5th Cir. 2016). Here, as in *Audler*, the ALJ failed to follow the Fifth Circuit's guidelines. The law is clear that "[a]n ALJ is not required to specify or address all the evidence in the record that does or does not support his conclusion." *Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *14 (N.D. Tex. Sept. 30, 2015). That said, it is unclear that the ALJ considered much of the evidence Plaintiff points to in support of his argument, or for that matter, the evidence the Commissioner relies upon. Other than the Function

14

Reports, the ALJ cited *no* treatment notes from Plaintiff's treating psychiatrist, treating psychologist, or social worker to support his Paragraph B and Paragraph C findings.  The cursory statement that Plaintiff has a history of bipolar disorder and PTSD weighed against cherry picked statements in the Function Reports  is insufficient to determine whether that ALJ's conclusion at step three is based on substantial evidence in the record, and that matter must be remanded for further development of the record.

Dark also asserts that the ALJ erred by not addressing the effect of his frequent ongoing mental health appointments in formulating his RFC, and in his hypothetical questions posed to the Vocational Expert.  Darl argues that in 2017, the medical records from the VA show that he spent thirty-six days attending mental health related appointments and eight days in 2018.  Dark testified that he attends weekly therapy sessions, individual and group.  (Tr. 54-55).  The Commissioner counters that there is nothing in the record that supports Dark's argument that he has good and bad days such that he could not maintain employment and that missing a few hours of work each month to attend therapy does not indicate could not work on a regular and continuing basis.  According to the Commissioner, frequent medical appointments do not foreclose a traditional employment schedule.  *See Oestreich v. Comm'r of Soc. Sec.*, No. 4:16-CV-00152-O-BL, 2016 WL 11259034, at *4 (N.D. Tex. Dec. 19, 2016), *report and recommendation adopted*, No. 4:16-CV-00152-O-BL, 2017 WL 1503155 (N.D. Tex. Apr. 27, 2017), citing *Audler v. Asture,* 501 F.3d 446, 448 (5th Cir. 2007).  Unlike *Oestreich*, Plaintiff has pointed to evidence of PTSD and Bipolar Disorder, conditions which have required persistent and lengthy therapy.  Because Dark's medical appointments were not considered by the ALJ, on remand the ALJ should address whether his absence to attend mental

health related appointments would erode his ability to maintain substantial gainful activity.

## VI. Conclusion

Based on the foregoing, there in an absence of substantial evidence to support the ALJ's decision at step 3, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 14), is GRANTED, Defendant's Motion for Summary Judgment (Document No. 12) is DENIED, and this matter be REMANDED to the Social Security Administration pursuant to 42 U.S.C. §405(g), for further administrative proceedings consistent with this opinion.

Signed at Houston, Texas, this 18th day of September, 2020

Frances H. Stacy
United States Magistrate Judge